J-S30012-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.E.H., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| D.A.H., | |
| Appellant | No. 1771 MDA 2016 |

Appeal from the Order Entered September 27, 2016
In the Court of Common Pleas of Centre County
Civil Division at No(s): 2016-3434

BEFORE:  SHOGAN, RANSOM, and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.:                      **FILED JUNE 19, 2017**

D.A.H. ("Appellant") appeals from the order finalizing a temporary protection from abuse ("PFA") order entered in favor of his sister-in-law, J.E.H.  We affirm.

Following an incident on September 8, 2016, involving Appellant's combative behavior, J.E.H. filed a PFA petition.  Petition, 9/15/16.  Therein, J.E.H. described a course of conduct by Appellant that involved verbal and physical threats of injury, threatening or harassing phone calls, name calling, the use of obscenities, an increase in physical violence, and Appellant's access to weapons.  *Id.* at ¶¶ 7–9, and Checklist.  The trial court conducted an *ex-parte* hearing and entered a temporary PFA order.  Order, 9/15/16.  At an evidentiary hearing on September 26, 2016, J.E.H. appeared

with counsel; Appellant appeared *pro se*. J.E.H., her husband, and Appellant testified at a hearing. N.T., 9/26/16, 3–65.

The notes of testimony reveal the following: J.E.H. is married to Appellant's brother W.H. N.T., 9/26/16, at 3, 28. J.E.H. worked for United Cerebral Palsy ("UCP") and was a day-time caregiver for Appellant's brother, E.H., who lives with Appellant's mother and two other brothers, K.H. and M.H. in a house owned by W.H. and K.H. *Id.* at 4, 28, 34. Another UCP employee provided care to M.H. during the day. *Id.* at 10. K.H. eventually quit his job to take care of E.H. and M.H. *Id.* at 11, 54.

At one point during J.E.H.'s employment, Appellant accused her of neglecting his mother, stealing her money, and not taking care of his brothers, M.H. and E.H. *Id.* at 6. He also threatened to have J.E.H. removed from the house and arrested by the police. *Id.*

On September 8, 2016, at approximately 5:00 p.m., Appellant entered the house with groceries and began threatening to call the police and have J.E.H. and her husband W.H. arrested for trespassing. N.T., 9/26/16, at 7, 35. W.H. called the Agency on Aging to have a representative explain that W.H. and J.E.H. were allowed to be there. *Id.* at 8, 35–37. Angrily, Appellant said goodbye to his mother and brothers and left the house. *Id.* at 8, 37. As he was leaving, Appellant turned to W.H. and said, "I'll see you in hell." *Id.* J.E.H. considered that a threat to herself as well. *Id.* J.E.H. is afraid of Appellant. *Id.*

- 2 -

Previously, J.E.H. and W.H. had called the state police on three occasions when they were at the house because of Appellant's behavior. N.T., 9/26/16, at 11–12. In 2010, Appellant and W.H. argued about unauthorized logging on W.H.'s property; at one point during the confrontation, Appellant threatened W.H. with a shotgun. *Id.* at 28–29, 42. Another confrontation involved shoving. *Id.* at 30, 44. During a confrontation involving their mother being at the Centre Crest facility, Appellant threatened "to destroy" W.H. *Id.* at 32. In June of 2016, Appellant again threatened W.H., saying: "[T]he next time I get that gun out, I won't be stopping this time, I won't give you hesitation." *Id.* at 33.

Appellant asserts that his sole purpose for being at the house was to take care of his mother and to protect his brothers because W.H. and J.E.H. were neglecting them, trying to start a day care in the house, and draining their mother's bank account. Although Appellant verbally argued with W.H., he did not threaten anyone with a gun. J.E.H. would call Appellant for help with his mother. N.T., 9/26/16, at 50–65.

Following the testimony, the trial court ruled from the bench:

> Okay. The [c]ourt's heard about an hour and fifteen minutes of testimony. Obviously, there's a power of attorney issue, there's Office of Aging issues, there's a long-running family dispute issue, there's historical subdivision property issues, there's a daycare dispute issue, there's a lot of issues. I'm here for one issue, that was the issue between [J.E.H.] and [Appellant], and that's a civil case for preponderance of the evidence. Based on the testimony the [c]ourt has heard here, the [c]ourt is going to rule to grant [J.E.H.] the permanent PFA

against [Appellant]. [J.E.H.'s] the only person on the PFA, that's the only person this petition is for.

The [c]ourt is not making any determination of any kind of power of attorney, Office of Aging, or anything else with this family dispute, it's solely the one issue that's before the [c]ourt here today. And as far as taking care of the mother, they're going to have to work with the Office of Aging to figure out what the schedule's going to be.

N.T., 9/26/16, at 65–66. Appellant filed a timely appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises a single issue for our consideration:

"1. Whether there was sufficient evidence adduced at trial to establish Appellant committed abuse as defined in 23 Pa.C.S.A. § 6102(a)(2) or (5)?"

Appellant's Brief at 2. Our standard of review is well settled:

When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inference, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. **Fonner v. Fonner**, 731 A.2d 160, 161 (Pa.Super.1999) (citations omitted). This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it. **Id.** Furthermore, the preponderance of evidence standard is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence. **Raker v. Raker**, 847 A.2d 720, 723 (Pa.Super.2004).

**Thompson v. Thompson**, 963 A.2d 474, 477 (Pa. Super. 2008) (internal quotation marks omitted).

The PFA Act defines abuse, in relevant part, as follows:

**(a) General rule.--**The following words and phrases when used in this chapter shall have the meanings given to them in this section unless the context clearly indicates otherwise:

**"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

* * *

(2) Placing another in reasonable fear of imminent serious bodily injury.

* * *

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S. § 6102(a)(2),(5). Actual physical harm is not a prerequisite for the entry of a PFA order; the victim need only be in reasonable fear of imminent serious bodily injury. **Fonner**, 731 A.2d at 163.

The trial court disposed of Appellant's sufficiency challenge as follows:

In the case at bar, the [c]ourt heard credible testimony at the September 26, 2016 hearing from [J.E.H.] and [her] husband, who is [Appellant's] brother. Said testimony established the most recent incidents occurred around September 8, 2016. These incidents included [Appellant] contacting [J.E.H.'s] employer to falsely allege [J.E.H.] had abused [Appellant's] mother and [Appellant] becoming vociferous with [J.E.H.] and her husband at [Appellant's] mother's house, which resulted in [Appellant] making physical threats against [J.E.H.'s] husband. [J.E.H.] and [her] husband's testimony additionally established [Appellant's] previous course

of conduct. Said testimony established [Appellant] has perpetrated the following acts in his course of conduct: [Appellant] pointed a loaded firearm at [J.E.H.'s] husband [who] later brought this incident to [J.E.H.'s] attention and told her that next time [Appellant threatened to] shoot [J.E.H.'s] husband; [Appellant] has made threats to [J.E.H.'s] life; [Appellant] has repeatedly made allegations against [J.E.H.] and her husband which have resulted in unfounded conclusions; and [Appellant] has threatened to get [J.E.H.] . . . fired from [her] employment. Further, [J.E.H.] credibly testified to the [c]ourt in regards to her sincere fear of [Appellant] and her reasonable belief that [Appellant] poses an imminent threat of bodily harm to her.

The [c]ourt considered the totality of the circumstances established by the credible testimony rendered by [J.E.H.] and [her] husband at the September 26, 2016 hearing. In doing so, the [c]ourt properly exercised its discretion in finding the totality of [Appellant's] actions perpetrated against [J.E.H.] established sufficient evidence of [Appellant's] abuse of [J.E.H.] and that a final PFA order was necessary to cause the cessation of said abuse.

Trial Court Opinion, 12/2/16, at 5–6.

Our review of the certified record confirms that J.E.H. established by a preponderance of the evidence that Appellant committed abuse by engaging in a course of conduct toward J.E.H. without proper authority, under circumstances which placed J.E.H. in reasonable fear of bodily injury. 23 Pa.C.S. § 6102(a)(5). Moreover, we decline to undermine the trial court's credibility determinations, which are supported by the record. **Thompson**, 963 A.2d at 477. In sum, we discern no abuse of the trial court's discretion or error of law in its conclusion that the final PFA order was warranted.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/19/2017