J-S51016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| A.L., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| S.P., | |
| Appellant | No. 3862 EDA 2016 |

Appeal from the Order Entered December 7, 2016
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): 1610V7277

BEFORE: BOWES and SHOGAN, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED SEPTEMBER 27, 2017**

Appellant, S.P. ("Mother"), appeals from the December 7, 2016 order filed pursuant to the Protection From Abuse Act[1] ("PFA") entered on behalf of her child, A.L. ("Child"), who was born in September of 2002. The petition resulting in the PFA was filed by Appellee, A.L. ("Father").[2] We affirm.

The trial court set forth the factual background of this matter as follows:

> Mother and the child were at a community music event on October 17, 2016, which Mother helped organize. The child did

---

[*] Former Justice specially assigned to the Superior Court.

[1] Protection From Abuse Act, 23 Pa.C.S. §§ 6101-6122.

[2] Father and Child both have the initials "A.L." As noted, however, we shall refer to them as Child and Father in this Memorandum.

a rap performance with his uncle's group and wanted to go with his uncle afterwards to get a share of the $100 performance fee given to the group. Notes of Testimony, December 7, 2016, at 71-72. Mother initially gave the child transportation money to go with his uncle, then changed her mind after the child declined to do a performance with Mother. Id. at 41, 72. She accused him of being disrespectful and told him he could not leave. Id.

The child called Father, who picked him up and took him to his paternal grandparents. The child then sent a text to Mother asking if he could get his uniform for school the next morning and she refused, so he did not go to school the next morning. Id. at 41. That next day, however, he sent a text to Mother that he wanted to speak with her. Mother went to the grandparents' home and the child told her he wanted to live with Father. An argument ensued between Mother and Father and the child was told to go upstairs so he wouldn't hear the argument. Id. at 41-42.

Paternal grandparents then told Father to let the child leave to calm down the situation. Id. at 64. The child went outside and got into the car driven by Mother's friend, [B.F.]. The child began hitting his legs and crying in the back seat. Id. at 42. [B.F.] told him not to do that in his car so the child got out of the car just as Mother came around and tried to keep him from getting out. Id. at 42, 83. When he tried to move past her she started hitting him and punched him in the face and lip. Id.

The child ran into the house and Mother came after him and got into an altercation with Father and hit Father. She then left the house and the police were called. Id. at 43.

The next day the child went to school without a uniform, accompanied by [F]ather, and had to speak with the dean because he had no uniform. Upon observing the child's face, the dean took the child and Father to her office where she was told what had occurred on October 17th. Id. at 57. Father left shortly thereafter and the dean took the child to the nurse. After examining the child, the nurse called Father to come get the child and told him the child needed to see a doctor. Id. at 58, 66. Since Father had recently lost his employment, he had no insurance, and could not afford the fees quoted by facilities he called, so the child remained out of school for a few days. Id. at 66.

Mother corroborated most of the child's testimony except she portrayed the child as disrespectful, with an attitude, and she described Father as being more aggressive and confrontational than had been described by the child. Id. at 73, 76-79. She said she hit the child twice in his face, then grabbed him by the neck to try to get him back into the car. Id. at 83. She also admitted hitting Father, but said he charged at her. Id.

[B.F.'s] testimony mirrored Mother's testimony, although he said he did not see Mother hit the child. Id. at 98. He also denied seeing any black eye or lip bleed on the child when the child returned later to apologize to him for disrespecting his car. Id. at 104.

Father took photos of the child's face after the police were called and the photos were described by the court as follows:

The first photo shows a slight mark on the right hand side. It's pretty small, maybe not even a half an inch large, but it's a red mark. You can see a crack in his skin. The second photo is on the child's right lip. You could see the right lip is swollen. The bottom right lip it looks like there was some appearance of blood. And then, there is a clear, clear, clear big bruise under the child's left eye. It's really swollen. Id. at 106-107.

Trial Court Opinion, 3/28/17, at 3-5 (footnotes omitted).

On October 18, 2016, the day following the incident, Father filed a PFA petition on behalf of Child, and a temporary order was entered that day. Following a hearing, the trial court entered a final PFA order on December 7, 2016. The PFA order directed that Mother was not to abuse, harass, stalk, or threaten Child. PFA Order, 12/7/16. In addition to the PFA order, the trial court entered a separate custody order, which it called an "add on" order. This separate custody order provided as follows:

AND NOW, THIS 7TH DAY OF DECEMBER, 2016, IT IS HEREBY ORDERED AS FOLLOWS:

AS AN INTERIM ORDER IN CONNECTION WITH THE PROTECTION FROM ABUSE ORDER (1610V7277):

MOTHER … AND … FATHER … SHALL SHARE LEGAL CUSTODY OF THE CHILD … BORN [in] SEPTEMBER [of] 2002.

FATHER SHALL RETAIN PRIMARY PHYSICAL CUSTODY OF THE CHILD.

MOTHER SHALL HAVE PARTIAL PHYSICAL CUSTODY EVERY SUNDAY AT THE HOME OF PATERNAL GRANDPARENTS UNTIL SUCH TIME THE CHILD FEELS COMFORTABLE WITH STAYING WITH MOTHER.

MOTHER MAY HAVE PERIODS OF PARTIAL PHYSICAL CUSTODY AT SUCH TIME AS AGREED AMONG FATHER, THE CHILD, AND MOTHER.

FATHER IS INSTRUCTED TO FILE FOR MODIFICATION AND THE INTAKE UNIT IS INSTRUCTED TO PROCESS HIS PETITION UPON PRESENTATION ON DECEMBER 8, 2016 AND THE MATTER SHALL BE EXPEDITIOUSLY SCHEDULED BEFORE A MASTER.

MATTER SHALL NOT BE RESCHEDULED BEFORE JUDGE PECHKUROW.

NOTICE OF INTENT TO RELOCATE: NO PARTY MAY MAKE A CHANGE IN THE RESIDENCE OF ANY CHILD WHICH SIGNIFICANTLY IMPAIRS THE ABILITY OF THE OTHER PARTY TO EXERCISE CUSTODIAL RIGHTS WITHOUT FIRST COMPLYING WITH ALL APPLICABLE PROVISIONS OF 23 PA. C.S. 5337 AND PA. R.C.P. NO. 1915.17 REGARDING RELOCATION.

Custody Order, 12/7/16, at 1.

On December 22, 2016, Mother filed a notice of appeal in which she purported to appeal from the PFA order and the custody order. Both the trial court and Mother complied with Pa.R.A.P. 1925.

- 4 -

On December 27, 2016, this Court filed an order noting that Mother had filed a single appeal from two separate orders, and we directed Mother to show cause why the single appeal from two orders should not be quashed or dismissed. On January 9, 2017, Mother filed her response and informed this Court that she "withdraws any deemed separate appeal of the interim custody order dated December 7, 2016 as entered by the Honorable Doris A. Pechkurow as an "add-on" to the PFA order. ***Mother wishes to proceed with her appeal of the December 7, 2016 PFA final order only***." Mother's Response to Order to Show Cause, 1/9/17 (emphasis in original). Accordingly, we shall address only Mother's appeal from the PFA order.[3]

We begin with our well-settled standard of review. "In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." ***Boykai v. Young***, 83 A.3d 1043, 1045 (Pa. Super. 2014) (citations omitted).

> When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inference, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it. Furthermore, the

---

[3] It appears that due to the "add-on" order directing custody of Child, this appeal was designated a Children's Fast Track pursuant to Pa.R.A.P. 102. However, as Mother has abandoned any challenge to the custody order, the Children's Fast Track designation is unwarranted.

preponderance of evidence standard is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence.

*Thompson v. Thompson*, 963 A.2d 474, 477 (Pa. Super. 2008) (internal citations and quotation marks omitted).

Section 6102 of the Protection From Abuse Act provides the following definition of "abuse":

**"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.

(3) The infliction of false imprisonment pursuant to 18 Pa.C.S. § 2903 (relating to false imprisonment).

(4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).[4]

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is

---

[4] *See* 23 Pa.C.S. § 6303 (definitions).

> inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S. § 6102(a).

We begin our discussion by noting that Mother's first and fourth issues challenge aspects of the trial court's custody order. ***See*** Mother's Brief at 4-12.[5] However, as discussed above, Mother withdrew her custody challenge. Mother's Response to Order to Show Cause, 1/9/17. Accordingly, we decline to address these issues.

In Mother's second issue she argues that the trial court abused its discretion by interviewing the minor child *in camera* when Mother did not waive her right to have counsel present. After review of the record, we conclude that Mother failed to object to the *in camera* interview. When the trial court proposed an *in camera* interview the following exchange took place:

> THE COURT: [Counsel for Mother], would you have an objection to my interviewing the child in the robing room?
>
> [Counsel for Mother]: No, Your Honor, but I do want to question. I do have questions. These are serious allegations and --

---

[5] We note with consternation that Mother's Statement of Questions Involved at pages one through two does not parallel the issues in the argument portion of Mother's appellate brief. Rather, the argument at pages four through twelve follows the issues provided in the Table of Contents. In an effort to prevent confusion to the reader, we address the issues as presented in the argument portion of Mother's brief. We further note that Mother's Statement of Questions Involved at least fairly suggests issues two and three as presented in the Table of Contents, Mother's Brief at i-ii, and we decline to find waiver based on a violation of Pa.R.A.P. 2116(a).

> THE COURT: All right. Just a minute. How about if I interview the child and then I could come out and make a representation and then you can take it from there. All right.
>
> [Counsel for Mother]: That's fine.
>
> THE COURT: Okay. All right. All right. …

N.T., 12/7/16, at 19.

Following the *in camera* interview, which was transcribed, the trial court returned to the courtroom and summarized what Child told the court. N.T., 12/7/16, at 35-39. Child then entered the courtroom and, and in open court, repeated the information he had provided to the trial court during the *in camera* interview. ***Id.*** at 40-43. At that juncture, counsel for Mother proceeded to cross-examine Child. ***Id.*** at 44-58.

After review, we discern no error of law or abuse of discretion. The trial court asked counsel for Mother if she had an objection to the *in camera* interview; counsel responded that she had no objection, but she wished to question Child subsequent to the interview. N.T., 12/7/16, at 19. As set forth above, that is precisely what occurred. Mother raised no objection, and it is well settled "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Mother's failure to raise an objection deprived the trial court of an opportunity to address the issue and remedy any perceived prejudice. As such, Mother's claim of error is waived.

In her next issue on appeal Mother avers that the trial court erred in entering the PFA order because Child was not placed in fear of Mother, did not require medical treatment, and the Child Protective Services Act[6] was not violated. Mother's Brief at 10. We conclude that Mother's argument is misplaced. Child's fear of Mother and medical treatment need not be proven. As discussed, under the PFA, abuse is defined, *inter alia*, as "Attempting to cause or intentionally, knowingly or recklessly causing bodily injury[.]" 23 Pa.C.S. § 6102(a).

Here, the trial court credited the testimony establishing that Mother caused bodily injury to Child when she struck him in the face and grabbed him by the neck. Trial Court Opinion, 3/28/17, at 9-10. We reiterate that we defer to the credibility determinations of the trial court. **Thompson**, 963 A.2d at 477. Moreover, the PFA petitioner's testimony alone, if believed by the trial court, is sufficient. **Custer v. Cochran**, 933 A.2d 1050, 1058 (Pa. Super. 2007). Additionally, Mother points to no authority requiring a founded claim of child abuse under the Child Protective Services Act in order to satisfy abuse as defined in the PFA. Mother is entitled to no relief on this claim of error.

---

[6] 23 Pa.C.S. §§ 6301-6386.

For the reasons set forth above, we discern no abuse of discretion or error of law in the PFA order entered against Mother on December 7, 2016. Accordingly, we affirm.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


Date: *9/27/2017*