J-A19041-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.G., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 750 EDA 2021 |

Appeal from the Order Entered March 30, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001524-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: M.F.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.G., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 751 EDA 2021 |

Appeal from the Order Entered March 30, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000142-2021

BEFORE:   DUBOW, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED OCTOBER 29, 2021**

J.G. (Father) appeals from the decree entered in the Court of Common Pleas of Philadelphia County on March 30, 2021, involuntarily terminating his parental rights to his son, M.F.G. (Child), born in August 2019, and the order

---

[*] Retired Senior Judge assigned to the Superior Court.

changing Child's permanency goal from return to parent to adoption.[1]  Upon careful review, we affirm the decree and order.

We summarize the relevant facts and procedural history, as follows.  On September 2, 2019, the Philadelphia Department of Human Services (DHS) received a general protective services report alleging that Child was in the neonatal intensive care unit at Temple University Hospital due to respiratory distress and the need to be monitored for withdrawal symptoms after being born with fentanyl in his system.  Trial Court Opinion, 5/13/21, at 2-3 (citation to record omitted).  The report alleged that Mother tested positive for fentanyl, suboxone, benzodiazepines, and subutex at Child's birth.  Further, the report alleged that Mother lived with Father.  *Id.*

After multiple attempts to locate Mother and Father, DHS first communicated with them by telephone on September 20, 2019, when the parents visited Child at the hospital.  *Id.* at 3-4 (citation to record omitted). Mother and Father stated that they were transient and had been residing at a hotel since August 2019.  *Id.* at 4 (citation to record omitted).

The hospital discharged Child on September 20, 2019, and the trial court placed him in foster care pursuant to an order of protective custody.  Trial

---

[1] The court issued separate decrees involuntarily terminating the parental rights of K.F. (Mother), as well as the unknown father.  Mother filed notices of appeal from the decree and the goal change order, docketed at 764 & 765 EDA 2021, which this Court consolidated *sua sponte*.  We address Mother's appeal by separate memorandum.  The unknown father did not appeal.

Court Opinion, 5/13/21, at 4-5 (citation to record omitted). By order dated September 23, 2019, the court placed Child in shelter care. *Id.* at 5. The order further provided Mother and Father with supervised visitation twice per week and required that they be drug tested. *Id.*

On October 3, 2019, following a hearing, the Honorable Joseph Fernandes adjudicated Child dependent and continued Child's placement in foster care. The court maintained parents' weekly supervised visitation for two hour periods. The court referred Mother and Father to the Clinical Evaluation Unit (CEU) for a dual diagnosis assessment and three random drug screens to occur before the next hearing. In addition, the court referred Mother and Father to the Achieving Reunification Center (ARC) to obtain services related to parenting, housing, employment, and personal finance. Finally, the court required them to sign appropriate releases and consents regarding Child. Trial Court Opinion, 5/13/21, at 5 (citing Order of Adjudication and Disposition, 10/3/2019).

Thereafter, the Community Umbrella Agency (CUA) established a single case plan (SCP) and scheduled a meeting with Mother and Father to discuss the plan in late October 2019; however, Father did not attend the meeting. *Id.* at 6 (citation to record omitted). The SCP identified Child's permanency goal as reunification. In furtherance of the goal, Father was required to satisfy the following objectives: locate suitable housing; comply with ARC services;

increase his relationship with Child; address Child's medical problems; and address his drug and alcohol concerns. *Id.*

Following a status review hearing on January 16, 2020, Judge Fernandes again ordered Mother and Father to obtain a dual diagnosis assessment at the CEU, as they had not yet done so. Trial Court Opinion, 5/13/21, at 6. On February 6, 2020, the court conducted a permanency review hearing. That same day, the court entered an order finding that Mother and Father had minimally complied with their SCP, and had made no progress toward alleviating the circumstances which necessitated Child's placement. Further, the court ordered Mother and Father to re-engage in the ARC program for parenting, housing, employment, and personal finance. In addition, the court ordered Father to provide employment verification to CUA and complete anger management classes. *Id.* at 7. The CUA met with Mother and Father on April 20, 2020, and July 7, 2020, which Father attended, and reiterated and reviewed their objectives and the permanency goal of reunification. *Id.* at 7-8.

The next review hearing occurred on September 22, 2020, before the Honorable Allan L. Tereshko. The court entered an order indicating Father was referred to ARC twice but discharged for non-attendance, and he still lacked suitable housing. Trial Court Opinion, 5/13/21, at 8. The court also found Father had an appointment for an assessment at the CEU two days

later, on September 24, 2020.[2]  Finally, the court found Father had declined virtual visits with Child from March to August 2020, when in-person visits were prohibited due to COVID.  *Id.*; N.T., 3/30/21, at 20, 28.

On January 29, 2021, CUA held another SCP meeting with Mother and Father, which Father attended, and repeated and reviewed their objectives and the permanency goal of reunification.  Trial Court Opinion, 5/13/21, at 8-9.

On March 11, 2021, DHS filed an involuntary termination petition against Mother and Father pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and a petition seeking to change Child's goal to adoption.  The court convened a combined hearing on the petitions on March 30, 2021.  Child, then nineteen months old, was represented by Deborah Fegan, Esquire, serving as guardian *ad litem* (GAL).[3]  DHS presented testimony from CUA case manager, Anaya Roberts.  Mother and Father testified on their own behalf.  At the conclusion of the hearing, the trial court stated its findings on the record. N.T., 3/30/21, at 80-83.  The court found, in part:

> [T]here is a similarity of a narrative running through the cases and it goes something like this: Mother and [F]ather not engaged[.]   [M]other and [F]ather not complying with requirements[.] [M]other and [F]ather did not engage with ARC,

---

[2] The CEU assessment did not result in treatment recommendations for Father. N.T., 3/30/21, at 28.

[3] The GAL has joined DHS's brief advocating in support of the decree and order.

did not engage with CEU, did not engage with mental health[.] [M]other and [F]ather do not have housing.

That narrative began back in 2019, and I heard the same testimony today. Mother and [F]ather still do not have housing. **Mother and [F]ather have failed to submit any evidence that they have rectified any of the issues that brought [C]hild into care**.

. . .

N.T., 3/30/21, at 81 (emphasis added).

By decree dated and entered on March 30, 2021, the court involuntarily terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and issued an order changing Child's permanency goal to adoption. Father timely filed a notice of appeal from the decree on the adoption docket, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b); Father also filed a notice of appeal from the order on the dependency docket, along with a concise statement of errors complained of an appeal.[4] This Court consolidated Father's appeals *sua sponte*. The trial court entered a Rule 1925(a) opinion on May 13, 2021.

Father presents the following five issues for review:

1. Whether the trial court committed reversible error when it involuntarily terminated [F]ather's parental rights, where such determination was not supported by clear and convincing evidence under the [A]doption [A]ct, 23 Pa.C.S.A. § 2511(a) and (b)[?]

---

[4] By filing separate notices of appeal under each trial court docket number, Father complied with our Supreme Court's decision in *Commonwealth v. Walker*, 185 A.3d 969, 971 (Pa. 2018).

2. Whether the trial court committed reversible error when it involuntarily terminated [F]ather's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of [C]hild as required by the [A]doption [A]ct, 23 Pa.C.S.A. § 2511(b)[?]

3. Whether the trial court erred because the evidence was overwhelming and undisputed that [F]ather demonstrated a genuine interest in sincere, persistent, and unrelenting effort to maintain a parent-child relationship with [C]hild [?]

4. Whether the trial court abused its discretion and erred as a matter of law in changing the permanency goal to adoption from reunification, as there was not competent evidence that it was in the best interests of [C]hild[?]

5. Whether the trial court abused its discretion and erred as a matter of law by involuntarily terminating [F]ather's parental rights in that it violated the orders of Judge Walter J. Olszewski, Supervising Judge of Philadelphia Family Court[,] dated April 16, 2020 and August 25, 2020[,] which ordered that lack of treatment or services due to inability to access them during the Covid-19 pandemic would not to be considered as a lack of compliance and tolled the deadlines for filing termination and goal change petitions from the date of March 16, 2020[,] until the order was lifted which has not yet been done at the time of filing this appeal[?]

Father's Brief at 8-9.

Termination of parental rights is governed by Section 2511 of the

Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated

analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of

the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). We need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm a termination decree. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In his first issue, Father argues that the trial court abused its discretion and/or erred in terminating his parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8). Father's brief at 20-25. However, in his concise statement of errors complained of on appeal filed on the adoption docket, Father asserted errors regarding Section 2511(a)(1) and (2) only. Thus, Father has waived his claims concerning Section 2511(a)(5) and (8) by failing to include them in his concise statement. *See In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017) ("it is well-settled that issues not included in [a] . . . concise statement of errors complained of on appeal are waived.") (citing *Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006)).

Even if Father properly preserved his claim under Section 2511(a)(8), he is not entitled to relief. We review the decree for an abuse of discretion, as follows:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse

- 8 -

of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations omitted).

Section 2511(a)(8) provides:

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . .

23 Pa.C.S.A. § 2511(a)(8).

This Court has explained, "Section 2511(a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa. Super. 2003). Once the twelve-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of the agency supplied over a realistic period. *Id.* Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that

initially caused placement or the availability or efficacy of the agency's services. *In re Adoption of M.E.P.*, 825 A.2d 1266, 1276 (Pa. Super. 2003). The "relevant inquiry in this regard is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa. Super. 2009). We have acknowledged:

> [T]he application of Section (a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of her children. By allowing for termination when the conditions that led to removal continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while the parent is unable to perform the actions necessary to assume parenting responsibilities. This Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future.

*In re J.F.M.*, 71 A.3d 989, 997 (Pa. Super. 2013) (quoting *I.J.*, 972 A.2d at 11–12). Lastly, the court must determine whether termination of parental rights would best serve the needs and welfare of the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008-1009 (Pa. Super. 2008) (*en banc*).

Here, the trial court credited the testimony of CUA case manager Anaya Roberts that Father did not have appropriate housing at the time of the hearing. Father engaged in the ARC program for the aforementioned services after his third referral on January 20, 2021,[5] but he continued to reside with

---

[5] Father testified that he did not receive the earlier referrals to ARC, but the court found him not credible based on the permanency order findings that
*(Footnote Continued Next Page)*

his mother in Royersford, Pennsylvania, who "had two valid [general protective services] reports [against her] in Montgomery County, PA," which made her home unsuitable for Father to reunify with Child. Trial Court Opinion, 5/13/21, at 13 (citing N.T., 3/30/21, at 26-28). Thus, Father's housing objective remained outstanding.

At the time of the hearing, Father was waiting for parenting classes to become available through ARC, and so he had completed none. *Id.* at 14 (citing N.T., 3/30/21, at 34-35). With respect to visitation, it remained supervised throughout this case, and Father attended one hour visits in-person with Child every week. *Id.* (citing N.T., 3/30/21, at 28-29). Ms. Roberts testified on direct examination:

> Q. At this time, today, 18 months later, is [F]ather in the position, or close to a position[,] for reunification with Child?
>
> A. Not at this time.

N.T., 3/30/21, at 30. Because Father was still working on his SCP goals, "and the current resource parent can provide . . . stability and permanency right now," Ms. Roberts testified Child will not suffer irreparable harm if Father's parental rights are terminated. *Id.* at 31.

Child was nineteen months old at the time of the termination hearing, and he had been in placement since his discharge from the hospital after birth,

---

"Father was referred to ARC twice, and was discharged for non-attendance." N.T., 3/30/21, at 67.

approximately eighteen months earlier. Reunification was not imminent because the conditions which led to Child's placement continued to exist, and termination of Father's parental rights would best serve Child's needs and welfare because he resided in a pre-adoptive home which offered him permanence and stability. N.T., 3/30/21, at 31. Accordingly, if Father had not waived his claim under Section 2511(a)(8), it would fail because the trial court did not abuse its discretion in terminating his parental rights under that subsection.

In his second issue, Father argues that the court abused its discretion and/or erred in terminating his parental rights pursuant to Section 2511(b) because there was "a developing bond" between him and Child and to sever this bond would be harmful to Child. Father's brief at 27. We disagree.

Section 2511(b) provides:

> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

With respect to Section 2511(b), we have explained, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the

needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted).

Our Supreme Court has stated, "Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, 71 A.3d at 268. Moreover, the Court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id*. at 269. The *T.S.M.* Court observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id*.

The trial court in this case credited Ms. Roberts' testimony and found:

> [Child] has been at this same home since December 2019 and is bonded to the resource parent. . . . Ms. Roberts noted that Child looks to the resource parent to meet all of his developmental, emotional, medical and daily needs. He has a parental relationship with the resource parent and minimal relationship with . . . Father. Regarding visitation, Ms. Roberts noted that

- 13 -

> Father visits Child once a week for one hour. She testified Father has not placed himself in the position to care for Child. Ms. Roberts opined Child would not be irreparably harmed if Father's parental rights were terminated and Child be adopted by the pre-adoptive resource parent.

Trial Court Opinion, 5/13/21, 16-17.

Ms. Roberts testified that Child "is very bonded" to his foster mother, who has met all of his developmental, emotional, medical, and daily needs. N.T., 3/30/21, at 23. She stated that Mother and Father have a relationship with Child, "but it's very minimal." *Id.* at 24. Accordingly, we discern no abuse of discretion by the court in concluding that terminating Father's parental rights will serve the developmental, physical, and emotional needs and welfare of Child. Father's second issue fails.

In his third issue, Father argues that he demonstrated a genuine interest and effort to maintain a parent-child relationship with Child, which we deem relevant to whether his conduct warranted termination under Section 2511(a)(1). *See In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citation omitted) (Section 2511(a)(1) requires that the moving party "produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties."). This Court has explained parental duty "requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his

or her ability, even in difficult circumstances." ***In re B., N.M.***, 856 A.2d 847, 855 (Pa. Super. 2004) (citation omitted).

Because we have concluded the trial court did not abuse its discretion in terminating Father's parental rights pursuant to Section 2511(a)(8), we need not review the decree under Section 2511(a)(1). ***See In re B.L.W.***, 843 A.2d at 384 (stating that we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm a termination decree). Accordingly, Father's third issue fails.

In his fourth issue, Father argues that the court abused its discretion and erred in changing Child's permanency goal from reunification to adoption pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6351(f) (Disposition of dependent child). However, Father has waived this issue for failing to include it in his concise statement of errors complained of on appeal filed on the dependency docket. ***See In re M.Z.T.M.W.***, 163 A.3d at 466 ("it is well-settled that issues not included in [a] . . . concise statement of errors complained of on appeal are waived.") (citing ***Krebs***, 893 A.2d at 797).

Even if Father had properly preserved this issue, he would not be entitled to relief. First, given our disposition concerning termination, we would conclude that his appeal from the goal change order is moot. ***See In the Interest of D.R.-W.***, 227 A.3d 905, 917 (Pa. Super. 2020) (citing ***In re D.A.***, 801 A.2d 614, 616 (Pa. Super. 2002)) ("[E]ven if Father had not waived his goal change claim, it would be moot in light of our decision to affirm the court's

- 15 -

termination decrees."). Second, if not moot, Father's claim would be without merit.

We review the goal change order for an abuse of discretion. *In re S.B.*, 943 A.2d 973, 977 (Pa. Super. 2008) (citations omitted). This Court explained the relevant statutory provisions, as follows:

> Pursuant to [42 Pa.C.S.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia:* (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*In re A.B.*, 19 A.3d 1084, 1088-1089 (Pa. Super. 2011) (citations and quotation marks omitted). These statutory mandates "clearly place the trial court's focus on the best interests of the child." *In re S.B.*, 943 A.2d at 978 (citation omitted). Indeed, "[s]afety, permanency, and well-being of the child must take precedence over **all** other considerations." *Id.* (citation omitted) (emphasis in original). Our Supreme Court has stated, "the burden is on the child welfare agency . . . to prove that a change in goal would be in the child's best interest." *In re R.I.S.*, 36 A.3d 567, 573 (Pa. 2011).

Father asserts that reunification remained a viable option because there was no evidence that he lacked the capacity to parent. He argues that the court overlooked his efforts toward reunification in violation of the Juvenile Act's primary purpose of family preservation. We disagree.

At the time of the hearing on March 30, 2021, Child was in placement for approximately eighteen months, his entire life after discharge from the hospital. During that time, Father failed to timely comply with his SCP objectives. He did not engage with the ARC program until his third referral on January 20, 2021. Father had not obtained appropriate housing, and he had not started parenting classes. In addition, Father's visits had never progressed to unsupervised. Ms. Roberts opined that Father was not in a position to parent Child. On this record, the court found the goal change to adoption was in Child's best interests. **In re S.B.**, 943 A.2d at 978 ("Safety, permanency, and well-being of the child must take precedence over **all** other considerations."). Accordingly, even if Father had properly preserved this issue and it was not moot, we would discern no abuse of discretion.

Lastly, Father argues that the court abused its discretion and/or erred by involuntarily terminating his parental rights in violation of administrative orders in the Court of Common Pleas of Philadelphia County, Family Division, Juvenile Dependency Branch, dated April 16, 2020 and August 25, 2020,

relating to dependency cases during the statewide judicial emergency caused by COVID-19.[6]

The April 16, 2020 order directed that in-person supervised visitation be modified to virtual visitation. The order further provided that a parent's inability to access treatment or services "due to provider closures . . . **shall not** be interpreted as a lack of compliance with court-ordered services or treatment and/or permanency plan objectives." Order, 4/16/20, at 3 (emphasis in original). In addition, the order directed DHS/CUA to "provide reasonable efforts to ensure" a parent is "able to meaningfully participate in mandated services" during the pandemic, including, but not limited to, "[i]nquiring actively about, and closely monitoring, the availability of treatment and other services." *Id.* Finally, the order provided:

> Consistent with the Order of the Supreme Court of Pennsylvania, which, in pertinent part, tolled judicial timelines during the statewide judicial emergency, all judicial timelines established under the responsibility of DHS for filing termination petitions . . . pursuant to . . . 42 Pa.C.S.A. § 6351(f)(9) for purposes of involuntary termination of parental rights under the Adoption Act, . . . are TOLLED from the date of March 16, 2020 until the date on which this Order is lifted by the Court.

---

[6] On March 16, 2020, the Pennsylvania Supreme Court issued an order declaring a statewide judicial emergency until April 14, 2020. The Supreme Court also authorized president judges in each judicial district to declare a local judicial emergency. On March 18, 2020, the Pennsylvania Supreme Court declared a judicial emergency in all districts, and closed all courts to the public, subject to certain exceptions, until at least April 3, 2020. The Court subsequently extended the statewide judicial emergency to June 1, 2020.

Order, 4/16/20, at 3. The August 25, 2020 order directed that in-person visits may recommence, *inter alia*, and included the above provisions from the April 16, 2020 order.

Father argues that the court erred in terminating his parental rights and changing Child's goal to adoption because the administrative orders tolled the judicial timelines. However, Father is not entitled to relief because he did not raise any issues pertaining to the administrative orders prior to or at the termination hearing.

Issues not raised in the lower court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). In **Jahanshahi v. Centura Development Co., Inc.**, 816 A.2d 1179 (Pa. Super. 2003), we referenced the Supreme Court's emphasis on raising claims at the earliest opportunity to "eliminate the possibility that an appellate court will be required to expend time and energy reviewing claims on which **no trial ruling has been made**." **Id.** at 1189 (emphasis in original) (citation omitted). Furthermore:

> On appeal, we will not consider assignments of error that were not brought to the tribunal's attention **at a time at which the error could have been corrected** or the alleged prejudice could have been mitigated. **Tindall v. Friedman**, 970 A.2d 1159, 1174 (Pa. Super. 2009). "In this jurisdiction one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter." **Id.** (quoting **Thompson v. Thompson**, 963 A.2d 474, 475-46 (Pa. Super. 2008) (citation omitted)).

**State Farm Mutual v. Dill**, 108 A.3d 882, 885 (Pa. Super. 2015) (*en banc*)

(emphasis added). Thus, we conclude the issue is waived.

Even if not waived, the issue lacks merit. The trial court stated that it followed the administrative orders. Trial Court Opinion, 5/13/21, at 19. Indeed, DHS responds in its brief that the effect of the administrative orders is to toll the timeframe, *i.e.*, 15 of the last 22 months, in which it **must** file a termination petition or be excused from doing so.[7] DHS brief at 36. However,

_____

[7] Section 6351(f)(9) provides:

> § 6351. Disposition of dependent child.
>
> . . .
>
> **(f) Matters to be determined the permanency hearing.** — At each permanency hearing, a court shall determine all of the following:
>
> . . .
>
> **(9)** If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:
>
> > **(i)** the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;
> >
> > **(ii)** the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

*(Footnote Continued Next Page)*

DHS states that it is still authorized to file termination petitions in accordance with the Adoption Act. *Id.* We agree. Because Father provides no evidence that the court abused its discretion and/or erred by involuntarily terminating his parental rights, Father's final issue, if not waived, would fail.

Termination decree affirmed. Goal change order affirmed.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/2021

_____

**(iii)**
the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

For children placed in foster care on or before November 19, 1997, the county agency shall file or join a petition for termination of parental rights under this subsection in accordance with section 103(c)(2) of the Adoption and Safe Families Act of 1997 (Public Law 105-89, 111 Stat. 2119).

42 Pa.C.S.A. § 6351(f)(9).

- 21 -