J-A07004-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| NICOLE L. BROOKS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MUHAMMAD I. BILAL | : | |
| | : | |
| Appellant | : | No. 1489 EDA 2022 |

Appeal from the Order Entered May 9, 2022
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s): 1912V7965

BEFORE: DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY DUBOW, J.:                          **FILED APRIL 5, 2023**

Appellant, Muhammad I. Bilal, appeals from the May 9, 2022 order that granted the petition for protection from abuse ("PFA petition") that Appellee, Nicole L. Brooks, filed against Appellant pursuant to the Protection From Abuse ("PFA") Act, 23 Pa.C.S. §§ 6101-22. Upon review, we affirm.

The relevant factual and procedural history is as follows. Appellant and Appellee were in an intimate relationship for approximately five years and engaged to be married. During the relationship, Appellant lived in New York City with his ex-wife while Appellee lived in Philadelphia.

On January 3, 2020, Appellant flew to Chicago to spend time with his daughters and other family members. While Appellant was in Chicago, the parties' relationship ended via text message. On the same day, Appellant flew from Chicago to New York City, then drove to Philadelphia, to arrive at Appellee's house at 2:00 AM on January 4, 2020. Appellant woke up Appellee,

demanded money from her, and threatened to send naked pictures of Appellee to her employer and her ex-husband, with whom she was currently in a custody dispute, if Appellee refused. Appellee complied and sent Appellant money through Cash App, a mobile payment service.

Appellant asked Appellee to perform oral sex on him, and, when Appellee refused, he pushed her head down to force her. Appellee became very upset and told Appellant that she had a headache and needed to go to the hospital. Appellee would not let her go and physically held Appellee down until she fell asleep.

The next morning, Appellant would not let Appellee leave the house without him. The parties went to Starbucks, and while Appellant was paying for coffee, Appellee went to the bathroom and secretly called her mother, Angela Jones-Brooks, to tell her what was happening. The parties briefly went to a movie theater, but Appellant expressed that he was concerned that Appellee was going to "run off" so they left and went to T.G.I. Fridays. N.T. Hearing, 5/9/22, at 25. While at the restaurant, Appellant briefly left the table to call his daughter and told Appellee if he could not get in touch with his daughter, that Appellee would "have to pay[.]" *Id.* at 25. Appellee believed that Appellant meant that he would "harm [her] physically and financially" because Appellant had "done it before." *Id.* at 26.

The parties returned to Appellee's home, where Appellee hid in the bathroom to text her mother. Appellee was so worried that Appellant would discover the messages that she deleted them immediately after sending them.

Appellee's mother was concerned for her daughter's safety and contacted Appellee's father. Appellee's father called the police, who responded to Appellee's home and arrested Appellant.

On January 5, 2020, Appellee filed a PFA petition against Appellant. After an *ex parte* hearing, the trial court issued a temporary PFA order against Appellant directing that: 1) Appellant shall not harass, stalk, threaten, or attempt to threaten to use physical force against Appellee; 2) Appellant shall not contact Appellee; and 3) Appellant shall be excluded from Appellee's residence.

On January 10, 2020, the trial court continued the matter due to a related pending criminal case against Appellant. On July 7, 2020, the case was administratively cancelled and rescheduled due to the COVID-19 judicial emergency. The trial court continued the case on seven subsequent listings due to Appellant's pending criminal matter.

On May 9, 2022, the trial court held a hearing on the PFA petition. The court heard testimony from Appellee, Appellee's mother, and Appellant.

Appellee testified to the above events. Additionally, Appellee testified that there were previous incidents of physical abuse between the parties. Appellee testified that Appellant would smack her, strangle her, punch her in the eye, and beat her in the head causing concussions and requiring a visit to the hospital. Appellee further testified that in 2018, she went to a domestic violence shelter, but Appellant tracked her down and found her. Appellee explained that the staff at the shelter helped her file a PFA petition on July 17,

2018, but that she did not pursue the petition because Appellant informed her that he was sick with cancer. Appellee decided to reconcile with Appellant, but explained that "it got worse." *Id.* at 28.

Appellant admitted into evidence text messages from December 2019 which demonstrated that Appellant texted Appellee fifteen naked photographs of Appellee and expressed that "you think you can disobey and get a good outcome," and "you're starting a war." *Id.* at Plaintiff's Exhibit 1. When Appellee failed to respond, Appellant typed, "Does that mean you will comply or nah?" *Id.* When asked about the picture text messages, Appellant explained, "[i]t's nude photos that he would use if I wasn't doing something that he wanted me to do." *Id.* at 16.

Appellee's mother testified that, on the day in question, she became concerned for Appellee's safety because some of Appellee's text messages were incoherent, and the way Appellee was acting concerned her enough to contact Appellee's father and tell him that Appellee needed help.

Appellant testified to a different set of events. Appellant stated that he was visiting his daughters and his ex-fiancé in Chicago when Appellee became jealous and threatened to trash Appellant's belongings, including a hard drive of a thesis film that Appellant needed to submit to finish film school. Appellant testified that when he arrived at Appellee's house, he told her that he wanted to end their relationship and Appellant started throwing stuff around the house. Appellant showed Appellee the movie "Marriage Story" about a

divorced couple that ended up being amicable and suggested that they go to sleep.

Appellant further testified that the next morning, Appellee was still angry and he took her to Starbucks, the movies, T.G.I. Fridays restaurant, CVS, and Wendy's because Appellee seemed calmer out in public. Appellant explained that he noticed Appellee was acting strangely and texting a lot, and he asked her repeatedly if she was ok and if she had something else she would rather be doing. Appellant stated that when the parties returned home, they decided to go to sleep. Appellant testified that the next morning, Appellee tried to be intimate with him, but he refused. As he was starting to leave, the police arrived and arrested him.

At the conclusion of the hearing, the trial court placed on the record that exhibits P-1, D-2, and D-3 had been admitted into evidence. The court found Appellee's testimony regarding the abuse to be credible and granted Appellee's PFA petition.

Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Whether the trial court erred in finding the testimony of [Appellee] to be credible.

2. Whether the trial court erred in not ensuring that an exhibit used for impeachment be entered into evidence, an issue[] only discovered post-hearing when [Appellee]'s counsel advised that it was never entered into evidence and was immediately destroyed.

Appellant's Br. at 7 (renumbered).

In a PFA action, it is well settled that we review a trial court's legal conclusions for an error of law or an abuse of discretion. **Kaur v. Singh**, 259 A.3d 505, 509 (Pa. Super. 2021). "A trial court does not abuse its discretion for a mere error of judgment; rather, an abuse of discretion occurs where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will." **Id.** (citation and quotation marks omitted). On appeal, this Court will defer "to the credibility determinations of the trial court as to witnesses who appeared before it." **Karch v. Karch**, 885 A.2d 535, 537 (Pa. Super. 2005) (citation omitted). Moreover, "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." **Commonwealth v. Walsh**, 36 A.3d 613, 619 (Pa. Super. 2012) (citation omitted). Finally, we review the evidence of record in the light most favorable to, and grant all reasonable inferences to, the party that prevailed before the PFA court. **Snyder v. Snyder**, 629 A.2d 977, 982 (Pa. Super. 1993).

In Appellant's first issue, he avers that the trial court abused its discretion when it found Appellee's testimony to be credible. Appellant's Br. at 11. Specifically, Appellant argues that there were inconsistencies in

Appellee's testimony regarding who ended the parties' relationship and the cause of Appellee's headaches. *Id.* at 12. This argument fails.[1]

On appeal, this Court will not revisit the trial court's credibility determinations. *Woods v. Cicierski*, 937 A.2d 1103, 1105 (Pa. Super. 2007). As stated above, "[a]ssessing the credibility of witnesses and the weight to be accorded to their testimony is within the exclusive province of the trial court as the fact finder." *S.G. v. R.G.*, 233 A.3d 903, 907 (Pa. Super. 2020) (citation omitted). "In reviewing the validity of a PFA order, this Court must . . . defer to the lower court's determination of the credibility of witnesses at the hearing." *C.H.L. v. W.D.L.*, 214 A.3d 1272, 1276-77 (Pa. Super. 2019). "[T]his Court has no authority to overturn the trial court's credibility determinations" in PFA matters. *Karch*, 885 A.2d at 537.

Our review of the record supports the trial court's findings. Because we defer to the trial court's credibility determinations, this issue fails to garner relief.

In his second issue, Appellant avers that the trial court abused its discretion when it failed to order Appellee to enter Exhibit P-2, which Appellee had used to refresh Appellant's recollection, into evidence. Appellant's Br. at

---

[1] Appellant also argues, for the first time on appeal, that the trial court erred when it "called out that D-1 was not authenticated" but "completely ignored" this issue when Appellant admitted Exhibit P-1. Appellant's Br. at 14. This argument is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.")

14. Appellant failed to raise this issue during the hearing and, therefore, failed to preserve this issue for our review.

It is well-settled that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). To preserve an issue for this Court's review, a party must object in a timely and specific fashion at the appropriate stage of the proceedings and failure to do so will result in waiver of that issue. ***Thompson v. Thompson***, 963 A.2d 474, 475–76 (Pa. Super. 2008). "On appeal the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected." ***Id.*** at 476 (citation omitted). "In this jurisdiction one must object to errors, improprieties[,] or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter." ***Id.*** (citation omitted). To be sure, "if appellate courts were to consider issues not raised in the trial court, then the trial would become a dress rehearsal[.]" ***Commonwealth v. Dennis***, 695 A.2d 409, 411 (Pa. 1997).

In the instant case, the trial court aptly opined:

It is not the trial court's responsibility to "ensure" exhibits, that were never moved for admission, be admitted into evidence. Appellee's counsel marked the text messages as P-2, and presented them to Appellant for him to review, but never moved to admit the text messages into evidence. Appellant did not challenge the use of P-2 during the [hearing] and did not ask that P-2 be admitted into evidence. At the conclusion of the hearing, the undersigned judge stated, "I will note again that P-1, D-2, and D-3 have been admitted into evidence." The court reminded the

parties which exhibits had been admitted into evidence, thus rendering Appellant's claim that they "only discovered" P-2 had not been admitted into evidence until after the [hearing] concluded to be disingenuous and without merit. Since Appellant neither objected to the exhibit not being moved into evidence nor did he ask that the exhibit be moved into evidence, Appellant's claim is waived.

Trial Ct. Op., filed 8/3/22, at 12 (internal citations omitted). We agree and find this issue waived.

In sum, the trial court did not abuse its discretion when it found Appellee's testimony of abuse to be credible and Appellant failed to preserve his evidentiary claim for our review.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/05/2023