J-A25005-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KRISTINE G. LOCHER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONALD D. LOCHER, JR. | : | |
| | : | |
| Appellant | : | No. 334 WDA 2023 |

Appeal from the Order Entered February 20, 2023
In the Court of Common Pleas of Cambria County Civil Division at No(s):
No. 2020-1785

BEFORE:   BOWES, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                **FILED: April 4, 2024**

Ronald D. Locher, Jr. ("Husband") appeals from the order denying his exceptions to the master's report, which addressed alimony and equitable distribution of the marital estate of Husband and Kristine G. Locher ("Wife"). We affirm.

On May 13, 2020, Wife initiated this action by filing a divorce complaint. As amended, the complaint also asserted counts for alimony and equitable distribution.  The trial court assigned the matter to a master, who held hearings over the course of two days in 2021.  The following facts were found by the master and later adopted by the court.

Husband and Wife were married in 1994 and are high school graduates. They have two adult children together.  During the marriage, Wife worked

_____

[*] Retired Senior Judge assigned to the Superior Court.

part-time as a clerk for two years, then worked at a medical center full-time, off and on, for twenty-five years. She stopped working in June 2019 so that she could watch her grandson and due to substantial, continuing health issues. Her rate of pay at the time of ceasing employment was fifteen dollars per hour. Wife has no retirement funds, as she liquidated her only retirement plan worth about $875 in 2019, approximately a year before the divorce proceedings were initiated. Her only sources of income at the time of the hearings were food stamps and spousal support of $925 per month, though she had a pending application for Social Security Disability ("SSD") benefits.

Husband has a certification in asphalt preparation and paving. He was employed with Quaker Sales from 1991 until May 2021. At the time he left Quaker Sales, he was making nearly $80,000 per year. Husband left so that he could participate as a 50% owner in a business he and another family member inherited from Husband's father in February 2021, Locher Demolition and Excavating, LLC. In that role, Husband has earned less income, being paid $920 a week, or $47,840 per year. The company earned a profit of $21,951 for the period of April 1, 2021 through October 15, 2021. Husband continues to remain in good health and has both an IRA and an annuity, as well as a savings plan.

After the hearing, the special master entered a report recommending that (1) a decree of divorce be entered; (2) the marital estate be split 65%-35% in favor of Wife; and (3) Husband pay Wife alimony in the amount of $1,300 per month indefinitely. As to equitable distribution, the master

considered each of the factors enumerated at 23 Pa.C.S. § 3502(a) in support of the recommendation, finding that the ones deserving the most weight favored Wife, which included her poor health; the disparity in employability between Husband and Wife; the greater opportunity for Husband to acquire assets and income in the future; retirement benefits; and the standard of living established during the marriage. *See* Master's Report and Recommendation, 5/10/22 at 18-19.

In suggesting the $1,300 monthly alimony award to Wife, the master reviewed the seventeen factors set forth at 23 Pa.C.S. § 3701(b). It focused on the facts that Husband had recently received an inheritance from the passing of his father and that he owned a 50% interest in a company that he did not have before the marriage, as well as Wife's substantial difficulty in maintaining gainful employment due to her health issues. *Id*. at 24-28. The master also recommended that Husband's alimony payment to Wife be "subject, of course, to a substantial change in circumstances[.]" *Id*. at 29.

Husband filed timely exceptions to the report, asserting a variety of errors pertaining to the equitable distribution and proposed award for alimony. After the consideration of oral argument, the trial court entered an order on February 20, 2023, denying the exceptions. The same day, it entered a separate decree and order granting divorce and adopting the proposed alimony and equitable distribution in favor of Wife.

This timely appeal followed. Both Husband and the trial court complied with Pa.R.A.P. 1925. Husband raises the following five issues on appeal, which we have reordered for ease of disposition:

I.     Whether the trial court erred and abused its discretion in denying the exception to the master's awarding Wife $1,300 monthly alimony for an indefinite period of time, which is excessive and inequitable.

II.    Whether the trial court erred and abused its discretion by awarding Wife 65% of the marital estate by not correctly applying the criteria for equitable division of marital property, pursuant to 23 Pa.C.S. § 3502.

III.   Whether the trial court erred in denying the exception to the master's report that the master erred in speculating on the future success of Husband's business interests.

IV.    Whether the trial court erred in denying the exception to the master's report that the master erred in relying on Wife's medical records absent any testimony from her physician and without any corroborating evidence.

V.     Whether the trial court erred in denying the exception to the master's report that the master had erred in relying on Wife's statement that she had filed for [SSD] when such benefits had not yet been awarded.

Husband's brief at 3-4 (cleaned up).

In his first issue, Appellant contends that the court should have granted his exception concerning the award of $1,300 in monthly alimony to Wife. *See* Husband's brief at 9-12. This Court reviews the decision to award alimony for an abuse of discretion. *See Conner v. Conner*, 217 A.3d 301, 315 (Pa.Super. 2019).

A trial court is permitted to award reasonable alimony when it finds that such is necessary. ***See*** 23 Pa.C.S. § 3701(a). Additionally, the award "may be for a definite or an indefinite period of time which is reasonable under the circumstances." 23 Pa.C.S. § 3701(c). We have further explained:

> [T]he purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, alimony following a divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.

***Conner***, 217 A.3d at 315-16 (cleaned up). The applicable statute provides that, "[i]n determining whether alimony is necessary and in determining the nature, amount, duration and manner of payment of alimony," the court must consider the following seventeen non-exclusive factors:

(1) The relative earnings and earning capacities of the parties.

(2) The ages and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under [§] 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S. § 3701(b).

Regarding the alimony awarded to Wife, Husband argues that the court failed to consider that he had a career change during the divorce proceedings,

which caused his income to fall dramatically. *See* Husband's brief at 9-10. He also faults the court for not regarding Wife's potential for employability, especially in light of her testimony that she had some interest in cleaning houses as a source of income. *Id*. at 10. Finally, Husband avers that the court did not properly weigh Wife's substantial award of 65% of Husband's retirement plans and accounts, which would help meet her ongoing needs, before awarding alimony. *Id*. at 12.

The trial court thoroughly and cogently summarized the master's findings, as well as its rationale for the award of alimony, as follows:

> [T]he master relied heavily on the parties' respective earning capacities. [He] outlined Wife's significant health problems, including a brain tumor in 2010, two brain operations in 2014, bleeding in the brain in or about August 2021, stomach ulcers in April 2021 that required surgery, and peripheral neuropathy of the legs for more than [eleven] years. The master noted that Wife takes ten different daily medications. [He] determined that Wife's health would severely impair her ability to engage in substantial and gainful employment. At best, Wife could potentially obtain light-duty part-time employment and, at worst, she would not be able to manage meaningful employment at all. The master further noted that, while Wife may not be completely incapable of self-support through appropriate employment, it would be difficult for her to find employment that accommodates her health problems and that pays enough for her to support herself. Wife had modest monthly expenditures of approximately $1,550. The master's findings and conclusions are supported by the record. The master found Wife to be generally more credible than Husband based upon the consistency of her testimony with the demonstrative evidence . . . , her straightforward demeanor at the hearings, and the dearth of demonstrative evidence offered by Husband.
>
> Husband, on the other hand, has [thirty] years of experience in the asphalt and paving business, where he made approximately $80,000 per year when he voluntarily left his employment in May 2021. Husband quit and took over his father's

- 7 -

existing demolition and excavating business after separation in May 2021, along with Husband's nephew. The master acknowledge[d] that Husband's business prospects are speculative because of the [short] length of time Husband has been operating the business. However, Husband failed to submit evidence regarding the financial history of the previously-existing business and what it may be capable of generating for its new owners. Moreover, Husband only provided an income statement and ledgers from Locher Demolition and Excavating, LLC, for the period of April 1, 2021 to October 15, 2021, **after trial**. For these reasons, it is disingenuous for Husband to complain that his income is speculative when he largely failed or refused to provide available information to confirm his prior earnings, the financial history of the existing business, and his financial prospects.

Trial Court Opinion, 2/20/23, at 2-3 (cleaned up, emphasis in original).

Under the facts of this case, we do not find that the court abused its discretion in awarding alimony for an indefinite period. A review of the master's report makes it clear that the master extensively considered all statutorily-required factors, and the trial court properly adopted those supported findings. Wife's health issues create a substantial disparity in income potential for both parties moving forward. Further, Wife provided documentation identifying her reasonable monthly expenses, which were greater than Husband's modest monthly budget. Finally, there is no indication that in considering whether alimony was appropriate, the court neglected to weigh the fact that Wife will receive a portion of Husband's retirements accounts. Since Wife was only fifty-one years old as of the hearing date, it would be years before she could withdraw any retirement funds without penalty to cover her monthly expenses. Therefore, Husband has not convinced us that the alimony award is inappropriate.

Husband next contends that the trial court erred in ordering a 65% equitable distribution award favoring Wife. We consider this argument mindful of the following:

> Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.

*Busse v. Busse*, 921 A.2d 1248, 1257 (Pa.Super. 2007) (citation omitted).

Additionally,

> [t]his Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.
>
> Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

*Carney v. Carney*, 167 A.3d 127, 131 (Pa.Super. 2017) (cleaned up).

In order to fashion an equitable distribution award, "the trial court must consider, at a minimum, the eleven factors set forth in 23 Pa.C.S. § 3502[.]" *Gates v. Gates*, 933 A.2d 102, 105 (Pa.Super. 2007) (cleaned up). These are as follows:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S. § 3502(a).

We have stated that "[t]he [§] 3502 factors are not a simple formula, rather they serve as a guideline for consideration. The facts of a particular case mandate how the [§] 3502 factors will be applied." **Gates**, 933 A.2d at 105. In reviewing a trial court's distribution order, this Court will not engage in a factor-by-factor review of the trial court's rulings. Rather, we reiterate that "we look at the distribution as a whole, in light of the court's overall application of the . . . § 3502(a) factors for consideration in awarding equitable distribution. If we fail to find an abuse of discretion, the order must stand." **Lee v. Lee**, 978 A.2d 380, 383 (Pa.Super. 2009) (cleaned up).

Husband argues that the trial court erred in awarding Wife 65% of the marital estate and, as a general matter, improperly applied the factors in § 3502. **See** Husband's brief at 13-15. He repeats that the court disregarded his new, reduced income in considering the economic circumstances of each party. **Id**. at 13. Husband believes that the court also improperly attributed earning potential to his new business venture based upon evidence not introduced into the record, such as Husband's business contacts developed while he worked with Quaker Sales, which is not an entity dealing with demolition. **Id**. at 13-14. He further maintains that the court erred in determining that Wife left her employment for health-related issues, instead of based on her testimony that she quit so that she could provide care for her grandson. **Id**. at 14-15. Finally, Husband opines that the court neglected to

consider that Wife voluntarily liquidated her retirement account in 2019 when she stopped working. *Id*. at 15.

As discussed above, the record reflects that in its report, the master went through the statutory factors *seriatim*, and concluded that while a number were neutral, six favored Wife. *See* Master's Report, 5/10/22, at 12-19 (placing particular focus on Wife's health problems, the disparity in employability between Husband and Wife, the greater opportunity for Husband to acquire assets and income in the future, Wife's lack of retirement benefits, the standard of living established during the marriage, and the economic circumstances Husband and Wife at the time of division of the marital estate). The trial court, finding that Husband articulated this issue generally in his exceptions without offering any argument more specific than those otherwise raised in his exceptions, did not provide a detailed analysis with respect to this claim. Instead, it incorporated its analysis as to the alimony award and the issues that will be discussed below, and concluded that the master did not err in making this recommendation. *See* Trial Court Opinion, 2/20/23, at 4.

On review, we find no abuse of discretion with the equitable distribution award. Contrary to Husband's assertions, the court plainly considered Husband's reduced income in light of the fact that the parties provided substantial testimony concerning Husband's new business venture. As the court indicated in it Rule 1925(a) opinion, Husband cannot now complain that

the master overlapped similarities between Husband's previous job and his new business when making its recommendation because Husband "failed or refused to provide available information to confirm his prior earnings, the financial history of the existing business, and his financial prospects." Trial Court Opinion, 2/20/23, at 3. Additionally, the record confirms that Wife liquidated her sole retirement account in 2019 both to pay marital debts and because she was unable to continue working based upon her health issues. We note, moreover, that while Appellant now asserts that the court should have weighed against Wife the fact that she retired in part to watch her grandson, the credited testimony from the hearing was that Husband encouraged Wife to do this so that the grandson need not attend daycare. *See* N.T. Hearing, 8/19/21, at 8-9. In looking at the distribution as a whole, we discern no abuse of discretion in how the court weighed the § 3502(a) factors, and therefore the order must stand. *See Lee*, 978 A.2d at 383.

Husband's remaining arguments attack specific evidence considered by the court, as a general matter, in fashioning the equitable distribution and alimony awards. His third claim is that the court erred when it denied his exception relating to the master's valuation of Husband's business interest. *See* Husband's brief at 17-19. Husband contends that because his then-newly-acquired business was only established months prior to the hearing before the master, he was "only able to give a small snapshot of the financial records" available for it. *Id*. at 17. Similar to arguments we have considered

and rejected above, he faults the court and master for considering his contacts in the unrelated business of asphalt and pavement to speculate that he will achieve success in demolition and excavating. *Id*. at 17-18.

After incorporating its other discussions concerning the value of Husband's business, the trial court disputed Husband's assertions thusly:

> [T]he master did not speculate as to the future success of Husband's business interest but, instead, noted that the "snapshot of Husband's business is too limited to tell how successful it will be down the road." The master found that Husband will have better opportunities to acquire capital assets and income in the future because he is in better health than Wife. Moreover, either party may petition for modification or termination of the court-ordered alimony upon changed circumstances of either party of a substantial and continuing nature.

Trial Court Opinion, 2/20/23, at 4 (cleaned up).

We cannot conclude that the trial court abused its discretion. Husband provided limited information concerning the financial health of Locher Demolition and Excavating, LLC, including for the period when his father operated the business before his passing in 2021. Husband has not convinced us that the court erroneously valued his business, since, as the master acknowledged, the potential success of the business could not be ascertained without speculation. Rather, the business's likelihood of success was considered as merely one factor within the totality of the circumstances, which bear out that in any event, Husband has a greater potential to gain assets and income in the future due to Wife's serious health concerns.

Next, Husband avers that the master erred in considering medical records introduced by Wife, and that the court should have granted his

exception as to that issue. **See** Husband's brief at 15-17. Specifically, he believes the evidence was improperly admitted, and prejudice ensued from his inability to cross-examine the physician's findings in the records. **Id**. at 16. This was particularly so because the divorce complaint was not amended to include a request for alimony until after Wife testified before the master. **Id**. at 16-17.

As to this claim, the trial court noted that the special master found Wife to have limited employability based on two factors: the medical evidence she presented **and** her credible testimony. **See** Trial Court Opinion, 2/20/23, at 3. It also recounted that Husband never objected to the admission of Wife's medical records. **Id**. Furthermore, the court determined that "Husband has failed to establish how the master erred in relying on Wife's testimony regarding her health and employability, nor has Husband established a basis for this court to displace the master's credibility determination." **Id**. at 3-4 (unnecessary capitalization omitted).

Upon review, we agree with the trial court that this claim does not entitle Husband to relief. To the extent his argument is premised upon improperly admitted evidence, Husband has waived that contention by failing to lodge an objection at the time the evidence was admitted. **See Thompson v. Thompson**, 963 A.2d 474, 475-76 (Pa.Super. 2008) ("[I]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings . . . . Failure to timely object to a basic and fundamental error will result in waiver of that issue.").

Moreover, to the extent that Husband disputes the credibility of Wife's testimony as to her medical issues, he has provided us no reason to disturb the court's assessment, especially because he agreed with counsel that Wife suffers from "pretty serious health problems." N.T. Hearing, 10/27/21, at 54. Finally, we find that Husband raises for the first time on appeal the argument that the divorce complaint was belatedly amended to include a request for alimony. Since this was not presented in Husband's exceptions to the trial court, it was not preserved for review. *See Thompson*, 963 A.2d at 475-76.

In his last claim, Husband asserts that the court erroneously rejected his exception pertaining to the fact that the master considered Wife's testimony that she had applied for SSD benefits. *See* Husband' brief at 19-20. He maintains that Wife was never awarded such payments, and accordingly, it was error to consider this testimony instead of the relevant factors pertaining to equitable distribution and alimony. *Id*. at 19.

Here, the court recounted that while the master **noted** Wife's application for SSD, it did not **rely** on that in its determination. *See* Trial Court Opinion, 2/20/23, at 4. Instead, the master concluded that even if the application for SSD was denied, Wife nonetheless had extremely limited potential for employability, for the reasons discussed *infra*. *Id*.

This finding is supported by the record. Neither the master nor the court placed any great emphasis on Wife's statement concerning her application for SSD. Instead, the bulk of the court's findings related to Wife's testimony and documentation supporting the plethora of health issues that have plagued her,

as well as her monthly expenses and lack of income. If any party emphasized Wife's SSD application, it was Husband, who raised it multiple times on Wife's cross-examination, though it was only mentioned in passing during direct. *See* N.T. Hearing, 8/19/21, at 81-82, 95-96, 98 (inquiring as to status of the SSD proceedings and potential benefits she may receive). We also find that Husband never objected to this testimony when it was presented to the master, which constitutes waiver. *Thompson*, 963 A.2d at 475-76. Husband is therefore not entitled to relief on this claim.

Since Husband has not convinced us that his exceptions to the master's report were improperly rejected, we will not disturb the trial court's order denying those exceptions.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

4/4/2024